[No. A126494. First Dist., Div. Five. Jan. 11, 2011.]

STATE OF CALIFORNIA ex rel. JOSEPH McCANN et al., Plaintiffs and Appellants, v.
BANK OF AMERICA, N.A., et al., Defendants and Respondents.

898

COUNSEL

Cotchett, Pitre & McCarthy, Frank M. Pitre, Ara Jabagchourian; Freshman & Freshman and Jerald A. Freshman for Plaintiffs and Appellants.

Arnold & Porter, Nancy L. Perkins and Laurence J. Hutt for Defendants and Respondents.

OPINION

**BRUINIERS, J.**—Joseph McCann and Douglas Valdetero (Appellants) brought a qui tam action against Bank of America, N.A. (BOA), in the name of the State of California under California's False Claims Act (CFCA; Gov. Code, § 12650 et seq.). The complaint alleged that BOA defrauded the state by failing to pay over to the state amounts that Appellants contend should escheat as abandoned or unclaimed property under California's Unclaimed Property Law (UPL; Code Civ. Proc., § 1500 et seq.). The trial court sustained BOA's demurrer to Appellants' first amended complaint (FAC) without leave to amend on the basis that it failed to plead a CFCA claim with the required specificity and failed to establish a violation of the UPL. We agree and affirm.

## I. BACKGROUND[1]

*The Check Clearing Process*

BOA serves as a "clearing" bank for checking transactions between other banks, as authorized by the Federal Reserve. The process of check clearing involves "the transfer of funds between banks when a check written [on an account at] one bank is deposited in [an account at] another bank." BOA functions as the check clearing bank for numerous "presenting banks" in California through BOA's check clearing houses located in San Francisco and elsewhere.[2] BOA is compensated for its services by the presenting banks which use those services.

A presenting bank performs preliminary processing and coding of the checks. Checks are bundled and tallied by the presenting bank, and are

---

[1] On appeal from an order of dismissal after an order sustaining a demurrer, we accept as true the factual allegations of the complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

[2] Exhibit B to the FAC identifies 23 check processing locations throughout the United States, with two in California—in Los Angeles and San Francisco.

encoded with a dollar amount on the check's magnetic ink character recognition line. A "batch ticket" is prepared that accompanies the bundle of checks to the clearing bank. The presenting bank also prepares a "cash letter," containing the dollar amount of the checks and the number of checks to be forwarded, along with the checks, to the clearing bank or the Federal Reserve. BOA receives the cash letter and accompanying checks from the presenting banks and enters them into its system, which tracks the number of checks and the total dollar amount of all checks as reported by the presenting bank.

BOA processes, clears, debits and credits millions of dollars in checks per day for its corresponding member banks. It processes about 14 percent of all checks nationwide. Twenty percent of the checks cleared by BOA are processed in the State of California. Approximately 75 to 85 percent of the checks processed by BOA's California clearing houses (in San Francisco and Los Angeles) originate from presenting banks situated in California and are payable to citizens, businesses and governments within the state. Ninety-nine point ninety-nine (99.99) percent of the checks are processed without error.

Debits and credits to the accounts of the presenting banks should balance on a daily basis, but do not always do so. As the check clearing bank, BOA is also responsible for clearing irregularities occurring during the check clearing process. Irregularities arise from such things as "free items" (a check processed by the presenting bank but not included in the batch total or batch listing by the presenting bank), "missing items" (a check detailed on the batch total or batch listing by the presenting bank but not captured, or captured for an improper amount, when the batch is run by the presenting bank), or "encoding errors" (where the presenting bank encodes a dollar amount on the bottom of the check which does not correspond to the amount written on the check).

Appellants alleged that BOA diligently researched errors which could result in debits (i.e., money due) to BOA, but pursued errors which would result in credits (i.e., money payable) to the presenting banks "much less regularly." They contended that, as a result of a policy decision by BOA not to research credits due at the end of each processing date to presenting banks, they became "unidentified credits," which could not be traced to their rightful owners. It was BOA's practice to transfer these monies to a suspense account for a short period of time, and to then appropriate them into income. Money from unidentified credits was projected and budgeted by BOA.

Appellants contend that these unidentified credits are subject to escheat to the state as unclaimed property subject to the UPL.

*California's False Claims Act*

■ The CFCA is intended "to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities. [Citation.]" (*Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488, 494 [99 Cal.Rptr.2d 721] (*Rothschild*).) It is modeled on the federal False Claims Act (31 U.S.C. § 3729 et seq.),[3] and "permits the recovery of civil penalties and treble damages from any person who '[k]nowingly presents or causes to be presented [to the state or any political subdivision] . . . a false claim for payment or approval.' ([Gov. Code,] § 12651, subd. (a)(1).)" (*Rothschild*, at p. 494.) A "claim" under the CFCA means "any request or demand . . . for money . . . [¶] . . . presented to an officer, employee, or agent of the state . . . ." (Gov. Code, § 12650, subd. (b)(1)(A).) False claims include "[k]nowingly present[ing] or caus[ing] to be presented a false or fraudulent claim for payment or approval" (Gov. Code, § 12651, subd. (a)(1)), but also include "knowingly and improperly avoid[ing], or decreas[ing] an obligation to pay or transmit money or property to the state or to any political subdivision" (Gov. Code, § 12651, subd. (a)(7)). The first type is referred to as a traditional false claim and the latter is known as a reverse false claim. (See 1 Epstein et al., Unclaimed Property Law and Reporting Forms (2010) § 5.12A, p. 5-40.14 (rel. 47-9/2007) (hereafter 1 Epstein et al.).)

■ Both the CFCA and federal false claims legislation " 'ferret[] out fraud on the government by offering an incentive to persons with evidence of such fraud to come forward and disclose that evidence to the government.' [Citations.]" (*State of California v. Pacific Bell Telephone Co.* (2006) 142 Cal.App.4th 741, 746 [48 Cal.Rptr.3d 427], fn. omitted (*Pacific Bell*).) "Subject to certain limitations, the [CFCA] permits a private person (referred to as a 'qui tam plaintiff' or a 'relator')[4] to bring such an action on behalf of a governmental agency. ([Gov. Code,] § 12652, subds. (c)(1), (d).)" (*Rothschild, supra,* 83 Cal.App.4th at p. 495.) If, after the qui tam plaintiff

---

[3] "The [federal False Claims Act] was originally adopted in 1863 to combat massive contractor fraud during the Civil War. [Citation.]" (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1197 [48 Cal.Rptr.3d 108, 141 P.3d 225].)

[4] The shorthand term "qui tam" derives from " 'the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who pursues this action on our Lord the King's behalf as well as his own." ' [Citations.]" (*San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.* (2010) 182 Cal.App.4th 438, 442, fn. 2 [106 Cal.Rptr.3d 84].) Qui tam plaintiffs or relators are sometimes known colloquially as "whistle-blowers." (1 Epstein et al., *supra,* § 5.12A, p. 5-40.13, fn. omitted.) BOA refers disparagingly to the qui tam plaintiffs here as "bounty hunters."

gives notice of the claim to the Attorney General, no governmental prosecuting authority decides to proceed with the action, "the qui tam plaintiff has the right to do so subject to the right of the state or political subdivision to intervene . . . .[5] ([Gov. Code,] § 12652, subds. (c)(8)(D)(iii) & (f).) Regardless of who prosecutes the qui tam action, if it is successful, the qui tam plaintiff is entitled to a percentage of the recovery achieved in the case. ([Gov. Code,] § 12652, subd. (g)(2)–(5).)" (*Rothschild*, at p. 495.)

The crux of Appellants' claim is that, by failing to report and deliver the unidentified credits to the state under the UPL, BOA made a "reverse" false claim against the state, in violation of the CFCA.[6]

*The Unclaimed Property Law*

" 'The UPL establishes the conditions under which certain unclaimed personal property escheats to the state. The UPL is not a permanent or "true" escheat statute. Instead, it gives the state custody and use of unclaimed property until such time as the owner claims it. Its dual objectives are "to protect unknown owners by locating them and restoring their property to them and to give the state rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed." ' [Citation.]" (*Azure Limited v. I-Flow Corp.* (2009) 46 Cal.4th 1323, 1328 [96 Cal.Rptr.3d 501, 210 P.3d 1110].) Code of Civil Procedure section 1501.5, subdivision (a) provides in pertinent part that "property received by the state under this chapter [(UPL)] shall not permanently escheat to the state." "The state holds the property as a custodian until the property's rightful owner can claim the property." (*Fong v. Westly* (2004) 117 Cal.App.4th 841, 844 [12 Cal.Rptr.3d 76].) "The UPL compels holders of certain classes of abandoned property subject to escheat to report and deliver the property to the State Controller (Controller), who is responsible for enforcing the UPL . . . . (Code. Civ. Proc., §§ 1530, 1532, 1571.) . . . [¶] The UPL imposes penalties for the willful failure to report and deliver abandoned property subject to escheat but only *after* the Controller has given notice by certified mail of the violation and the violator has failed to respond. ([Code

---

[5] On December 3, 2008, the state filed a notice of election to decline intervention.

[6] Appellants' first cause of action asserted a claim under Government Code section 12651, subdivision (a)(7), alleging that BOA knowingly made, used, or caused to be made a false record to avoid or decrease an obligation owed to the state. The second cause of action alleged an inadvertent submission of false claims, under Government Code section 12651, subdivision (a)(8). BOA insists that the second cause of action is a traditional false claim allegation. Appellants contend that they are pursuing only reverse claims. The distinction is not material to our decision.

Civ. Proc.,] § 1576, subd. (c).)" (*Pacific Bell, supra,* 142 Cal.App.4th at p. 745, fn. omitted.)

*The Pleadings*

Appellants, two former BOA employees, filed their original complaint against BOA on April 9, 2008, alleging violations of the CFCA. BOA demurred to the complaint on the grounds that it (1) failed to plead its purported causes of action with particularity; (2) failed to state a cause of action under the CFCA; and (3) concerned alleged unidentified credits that were not, as a matter of law, escheatable property under the UPL. On March 27, 2009, the trial court sustained BOA's demurrers, finding that the complaint lacked sufficiently specific allegations to support a CFCA claim. Appellants were given leave to amend.

The FAC at issue here was filed on May 8, 2009. BOA again demurred. At the July 8, 2009 hearing on the motion, the court first noted that a "[q]ui tam action is different than other actions in that the pleading requirements on a qui tam action require . . . a greater amount of specificity" and that the FAC did "not specify any particular amount or original claimant or owner." It found the FAC deficient in failing to "precis[ely]" allege "the property that is subject to escheatment." The trial court also found that the FAC failed to establish a claim under the UPL because it did not identify "a California bank with a [purported unidentified] credit." In sustaining the demurrers, the court observed that "the question really becomes, does the practice that you have described state a cause of action under the two statutes that you are alleging?"

Appellants acknowledged that they would be unable to further amend their pleadings to provide any greater specificity. The court sustained the demurrers to the FAC, without leave to amend "[f]or all the reasons stated by the Court on the record at the hearing and appearing in the transcript of those proceedings, which are incorporated by reference into this Order . . . ."

The court's order sustaining the demurrer without leave to amend was filed on August 25, 2009. A timely notice of appeal was filed on September 23, 2009.

## II. DISCUSSION

"A qui tam plaintiff bears the burden of establishing that the exercise of the court's jurisdiction is proper. [Citation.]" (*Pacific Bell, supra,* 142 Cal.App.4th at p. 748.) However, " '[i]n a facial challenge to the legal sufficiency of the jurisdictional allegations, the Court must accept as true all

well-pleaded facts in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction. [Citations.]' [Citation.]" (*City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1678 [1 Cal.Rptr.3d 312].)

"On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.] First, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. Next, we treat the demurrer as admitting all material facts properly pleaded. Then we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] [¶] We do not, however, assume the truth of contentions, deductions, or conclusions of law. [Citation.]" (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439–440 [88 Cal.Rptr.3d 330].)

When a demurrer is sustained without leave to amend, " ' "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." [Citation.]' " (*State of California ex rel. Bowen v. Bank of America Corp.* (2005) 126 Cal.App.4th 225, 239 [23 Cal.Rptr.3d 746] (*Bowen*).)

A. *Pleading Specificity Required for a CFCA Cause of Action*

■ "As in any action sounding in fraud, the allegations of a [CFCA] complaint must be pleaded with particularity. The complaint must plead ' "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." ' [Citations.]" (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 803 [107 Cal.Rptr.2d 710].) Among other defects, the trial court here found that the FAC lacked the requisite specificity, including the fact that it did "not specify any particular amount or original claimant or owner."

■ Appellants acknowledge that false claim actions are subject to "heightened fraud-like pleading requirements." They note generally, however, that less particularity is required where the defendant may be assumed to have pertinent facts, and " 'modern discovery procedures necessarily affect the amount of detail that should be required in a pleading.' [Citation.]" (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 608

[98 Cal.Rptr.2d 277].) However, qui tam actions are meant to encourage private whistleblowers, uniquely armed with information about false claims, to come forward. These insiders should have adequate knowledge of the fraudulent acts to comply with the pleading requirement. (See *Bly-Magee v. California* (9th Cir. 2001) 236 F.3d 1014, 1018–1019 [applying Fed. Rules Civ.Proc., rule 9(b), 28 U.S.C., which requires fraud to be pled with particularity—" 'insiders privy to a fraud on the government' should have adequate knowledge of the wrongdoing at issue [to] be able to comply . . ." with the heightened federal pleading requirement for fraud].)[7]

The trial court discussed the lack of specificity in the FAC, observing: "And I think the law is that for this kind of action, there has to be precision as to what is the property that is subject to escheatment. Where did it come from, and is it something over which the State of California can exercise control. And that specificity has to be more than common sense or more than it is likely that if this stuff happened in California, it must have involved a California bank with a credit. [¶] . . . [¶] . . . I mean basically what this case is about is that banks clear lots of checks. And sometimes at the end of the day there's stuff [lying] on the floor. And the question becomes what do you do with those. [¶] The allegation here is that [BOA] intentionally doesn't sort them out. But there is no allegation that there is a legal obligation to do so. [¶] And the question becomes, can the State of California jump into the middle of this without knowing any specificity on any particular piece of property that should be escheated, view this debit credit process as resulting in remaining property, and state a cause of action to take it. [¶] And I think on those facts the answer is no, it's not pleaded with sufficient particularity."

Appellants argue that they are unable to identify any presenting bank to whom unidentified credits are due only because of BOA's conduct in "stripping the identity of the presenting bank from the unidentified credit," and that BOA is seeking to take advantage of its own intentional conduct in "not researching the source of unidentified credits arising from its check clearing operations." They assert that the domicile of a presenting bank is in any event irrelevant since there is a presumption in the UPL that all unclaimed funds escheat to the state, and that BOA cannot obtain a "windfall" because one or more of the presenting banks might be domiciled outside of California. If some of the presenting banks are domiciled outside California, Appellants counter that their respective states can pursue the funds through Code of Civil Procedure section 1542.[8] This means, they contend,

---

[7] Since the CFCA is patterned on similar federal legislation, federal decisions are persuasive on the meaning of the CFCA. (*State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1299 [32 Cal.Rptr.3d 498, 116 P.3d 1175]; *Bowen, supra*, 126 Cal.App.4th at p. 240, fn. 11.)

[8] "At any time after property has been paid or delivered to the Controller under this chapter, another state is entitled to recover the property if: [¶] (1) The property escheated to this state

that where monies are escheatable, inability to establish domicile of the owner does not bar recovery.

This begs the question of whether Appellants have sufficiently identified monies that are escheatable. And Appellants present no authority for their position that the domicile of the owner of the property·that is subject to escheat is immaterial. The case that they cite, *Cory v. Public Utilities Com.* (1983) 33 Cal.3d 522 [189 Cal.Rptr. 386, 658 P.2d 749] (*Cory*) contains no such holding.

■ In *Cory*, the Supreme Court nullified an order of California's Public Utilities Commission (PUC) directing Pacific Telephone and Telegraph Company to make a pro rata distribution to its current customers of unclaimed refund amounts previously ordered by the PUC. (*Cory, supra*, 33 Cal.3d at pp. 523, 528.) The court merely held that the unclaimed refunds were subject to escheat, and should be held for the benefit of the unlocated customers and·for the use of the state in accordance with the UPL. (*Cory, supra*, 33 Cal.3d at pp. 523, 528.) Rather than supporting Appellants' argument, Code of Civil Procedure section 1542 recognizes that the state of domicile of the apparent owner of the property has a superior claim to escheat of property. The United States Supreme Court has "held that the State of the *creditor's* last known address is entitled to escheat the property owed him,[9] [and] if [an] address does not appear on the debtor's books or is in a State that does not provide for escheat of intangibles, then the State of the *debtor's incorporation* may take custody of the funds 'until some other State comes forward with proof that it has a superior right to escheat.' " (*Pennsylvania v. New York* (1972) 407 U.S. 206, 210–211 [32 L.Ed.2d 693,

under subdivision (b) of Section 1510 because no address of the apparent owner of the property appeared on the records of the holder when the property was escheated under this chapter, the last known address of the apparent owner was in fact in that other state, and, under the laws of that state, the property escheated to that state. [¶] (2) The last known address of the apparent owner of the property appearing on the records of the holder is in that other state and, under the laws of that state, the property has escheated to that state. [¶] (3) The property is the sum payable on a travelers check, money order, or other similar instrument that escheated to this state under Section 1511, the travelers check, money order, or other similar instrument was in fact purchased in that other state, and, under the laws of that state, the property escheated to that state. [¶] (4) The property is funds held or owing by a life insurance corporation that escheated to this state by application of the presumption provided by subdivision (b) of Section 1515, the last known address of the person entitled to the funds was in fact in that other state, and, under the laws of that state, the property escheated to that state." (Code Civ. Proc., § 1542, subd. (a).)

⁹ This is essentially a variation of the concept of " '*mobilia sequuntur personam*,' according to which intangible personal property is found at the domicile of its owner." (*Texas v. New Jersey* (1965) 379 U.S. 674, 680, fn. 10 [13 L.Ed.2d 596, 85 S.Ct. 626].)

92 S.Ct. 2075], quoting *Texas v. New Jersey, supra*, 379 U.S. at p. 682, italics added; see also *Delaware v. New York* (1993) 507 U.S. 490, 497–500 [123 L.Ed.2d 211, 113 S.Ct. 1550].) Since, as Appellants allege, BOA is headquartered in North Carolina, it would appear that Appellants must necessarily establish that one or more presenting banks entitled to unidentified credits have a corporate domicile in California.

We will assume, without deciding, that for purposes of the demurrer, Appellants' allegation of a 0.01 percent error rate in check processing would apply to the 75 to 85 percent of checks processed in California for presenting banks situated in California and payable to citizens, businesses and governments within the state,[10] and would therefore be sufficient to plead that at least one owner of the unidentified credits was domiciled in California.

That still does not mean that Appellants have properly pled the existence of an escheatable California account. Appellants contend that they have sufficiently "identified the particular scheme [(or 'business model')] that has unlawfully deprived the State of monies that should have rightfully escheated to it." They claim that in the FAC they "identify and allege the specific policies related to the failure to report the unclaimed credits, the specific individuals within BOA directing the policy[,] . . . the written materials evidencing the existence of the policy, the dates when the Appellants first learned of the policy, and the specific amounts unlawfully withheld on ·a monthly basis per city . . . ." They assert that this is a situation where the defendant may be assumed to have pertinent facts, and " 'modern discovery procedures necessarily affect the amount of detail that should be required in a pleading.' [Citation.]" (*Ludgate Ins. Co. v. Lockheed Martin Corp., supra*, 82 Cal.App.4th at p. 608.) Thus, they claim that they have adequately informed BOA of the specific facts supporting the claim against it.

The heightened pleading requirement for fraud allegations "serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also 'to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.' [Citations.]" (*Bly-Magee v. California, supra*, 236 F.3d at p. 1018.) While Appellants identified a *practice* they alleged to be fraudulent (i.e., failure to investigate unidentified credits and to then credit them to presenting banks), they still fail, as the trial court

---

[10] We agree with BOA that the domicile of the *payee* of a processed check is immaterial. The unidentified credits are the property of one or more of the *presenting banks*.

noted, to allege the existence of any legal obligation for BOA to do otherwise, or to directly identify an amount or account—a liquidated and certain obligation—due to any specified presenting bank (in Cal. or else-where) that would be subject to escheat under the UPL.[11] Whether viewed as a lack of pleading specificity, or as a substantive defect in failure to allege a necessary element of their cause of action, it is fatal to the complaint in either instance.

## B. *The UPL Claim*

The essential predicate for the false claims case Appellants seek to pursue is the existence of property that the Controller could properly claim under the UPL. Appellants' position is that the undifferentiated sums held in a suspense account by BOA and resulting from the 0.01 percent error rate in clearing checks are unclaimed personal property as defined by the UPL. We find that they are not.

■ The Controller's rights under the act are derivative. He succeeds, subject to UPL provisions, to whatever rights the owners of the abandoned property may have. (*Bank of America v. Cranston* (1967) 252 Cal.App.2d 208, 211 [60 Cal.Rptr. 336].) Accepting Appellants' pleading allegations, it is possible that one or more of the presenting banks may have inchoate and undefined contractual claims against BOA for some unspecified portion of the "unidentified credits." ■ But "[a]s one court aptly put it, 'I may breach a contract, but absent a specific remedy provided in the contract, I have no obligation to pay or transmit money . . . . Money is not "owed" without a specific contract remedy, a judgment or an acknowledgment of indebted-ness.' " (*Bowen, supra*, 126 Cal.App.4th at p. 242, quoting *U.S. ex rel. S. Prawer & Co. v. Verrill & Dana* (D.Me. 1996) 946 F.Supp. 87, 94–95.)

■ The specific types of property subject to escheat are listed in Code of Civil Procedure sections 1513 to 1523. "Among the types of property covered are bank deposits (§ 1513), sums payable on travelers checks, money orders and other instruments (§ 1513), contents of safe deposits (§ 1514), monies

---

[11] Appellants claim that the FAC pleads "the specific amounts unlawfully withheld on a monthly basis per city . . . ." It does not. Exhibit B to the FAC provides detail for "Transaction Services" nationally for BOA for the first seven months of 2001, with a monthly line item, by city, for such things as "Amount of Unapplied Credits Charged Off," "Amount of Credits Reclaimed," "Amount of Debits Charged Off," and "Recovery of Debits Previously Charged Off." Identification of the gross amount of "credits charged off" from checks processed at two locations in the State of California does not establish that this entire gross sum is subject to escheat to this state. It provides, at best, a basis to estimate the order of magnitude of the gross amount of the unidentified credits.

payable on insurance policies (§ 1515), and corporate dividends (§ 1516)." (*Cory, supra,* 33 Cal.3d at p. 526.) The shared characteristic of these defined categories of escheatable property is that they all encompass sums certain owed to identifiable (albeit unlocated) persons.

Appellants do not identify any particular statutorily defined category within the UPL that would encompass the "unidentified credits," and resist what they say is BOA's attempt to "pigeonhole" their claim.[12] Rather, they point to the " 'catch-all' " provision of Code of Civil Procedure section 1520, providing for escheat of "[a]ll tangible personal property located in this state and, subject to Section 1510, all intangible personal property, . . . that is held or owing in the ordinary course of the holder's business and has remained unclaimed by the owner for more than three years after it became payable or distributable . . . ." They assert that "[b]ased on a plain reading of [that section], the unidentified credits, accumulated during the course of [BOA's] check clearing business, are escheatable property simply by the fact that they have remained unclaimed for the statutory period."[13] They cite no supporting authority.[14]

But even assuming that the "catch-all" provisions of Code of Civil Procedure section 1520 might otherwise apply, Appellants must still show under that section that BOA held or owed a specific and liquidated legal obligation "payable or distributable" to some person or entity. (See *Bowen, supra,* 126 Cal.App.4th at p. 241.) In *Bowen,* the qui tam plaintiffs alleged that BOA, as well as other banks, failed to report and deliver to the Controller as escheated property under the UPL unearned fees charged for reconveyance

---

[12] The FAC alleged that BOA failed to escheat money to the state due under Code of Civil Procedure section 1513, subdivision (a)(4), which deals with money directly owed by a financial institution on a "written instrument." They make no such argument here.

[13] Appellants also note that the unidentified credits do not fall within four specifically defined statutory exemptions from the application of the UPL. These include (1) property in the official custody of a municipal utility district; (2) any property in the official custody of a local agency if such property may be transferred to the agency's general fund; (3) any property in the official custody of a court if the property may be transferred to the Trial Court Operations Fund; and (4) any type of property received by the state under the provisions of chapter 1 to chapter 6 of the Code of Civil Procedure. (Code Civ. Proc., § 1502.) They charge that BOA seeks to "have a judicially created exception for the unidentifiable credits where the Legislature has specifically prescribed what the exceptions are to be." The question, however, is not whether there is a defined exemption for the unidentified credits, but if they are encompassed by the statute in the first instance.

[14] Appellants seek to direct our attention to a trial court motion decision in their favor in a similar case filed by Appellants against BOA in the State of Florida and subsequently voluntarily dismissed. The trial court here refused a request to take judicial notice of those proceedings, finding them irrelevant. No request has been made here for judicial notice, and we would in any event likewise find the Florida trial court proceedings irrelevant.

of deeds of trust.[15] (*Bowen, supra,* 126 Cal.App.4th at pp. 231, 236.) The trial court sustained the defendant banks' demurrer without leave to amend for failure to state a cause of action under the CFCA. (*Bauer,* at pp. 238–239.) Our colleagues in the Second District Court of Appeal affirmed, holding that even if the banks were guilty of contractual breaches in failure to refund the reconveyance fees, the absence of allegations of an enforceable agreement or judgment requiring them to do so was fatal to the claim.[16] (*Bauer,* at pp. 242–243.) The pleading allegations in *Bowen* " 'at most, . . . would give some homeowners a cause of action for breach of contract and/or violation of the state reconveyance statute—causes of action which carry a range of potential damages should the homeowner sustain its burden of proof. These uncertain, unliquidated claims are not escheatable property under the California Unclaimed Property Law.' " (*Id.* at p. 239.)

Other states, in applying statutory "catch-all" provisions under the Uniform Disposition of Unclaimed Property Act,[17] have also concluded that there must be a liquidated and certain obligation to be subject to escheat. The Supreme Court of Wisconsin, for example, in *Employers Ins. of Wausau v. Smith* (1990) 154 Wis.2d 199 [453 N.W.2d 856], held that the statutory words " 'amount due and payable' " and " 'held and owing' " in its statute connote that the holder has a duty to make payment to the owner and that there is a degree of certainty inherent in the holder's obligation to the owner. (*Id.,* 453 N.W.2d at pp. 861–863 [uncashed workers' compensation checks held to be liquidated

---

[15] If a lender collects a reconveyance fee but later has knowledge (or should have knowledge) that no reconveyance was recorded, the lender shall either (1) cause the reconveyance to be recorded; or (2) refund the reconveyance fee to the borrower if a timely release of obligation was earlier recorded by the title insurance company. (Civ. Code, § 2941, subd. (j).) Evidence of the lender's knowledge that a timely release of obligation was earlier recorded "includes, but is not limited to, notice of a release of obligation pursuant to paragraph (3) of subdivision (b)" of section 2941. (*Ibid.*)

[16] We agree, as one treatise has noted, that *Bowen* appears, at least to some degree, to conflate the "obligation" requirement running from the holder to the state under the CFCA with the obligation between the holder and its customer. (1 Epstein et al., *supra,* § 5.12A, pp. 5-40.15 to 5-40.16 & fn. 101.) As we discuss *post,* we believe these are separate requirements. This does not change either the result or reasoning in *Bowen,* nor does it affect the principle under the UPL that only certain and liquidated obligations can be presumed abandoned. (See 1 Epstein et al., *supra,* § 5.12A, p. 5-40.16.) There can be no "obligation" to the state if there is none to the customer.

[17] California originally enacted the Uniform Disposition of Unclaimed Property Act (Uniform Act) in 1959. (*Douglas Aircraft Co. v. Cranston* (1962) 58 Cal.2d 462, 463 [24 Cal.Rptr. 851, 374 P.2d 819].) The Uniform Act has undergone subsequent revision (1981 & 1995) and is now known as the Uniform Unclaimed Property Act. Our current UPL is not the Uniform Act. (See Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc. (1981 ed.) foll. § 1500, p. 251.) The current version of Code of Civil Procedure section 1520 appears to be similar in many respects to section 9 of the Uniform Act, with the exception that our statute refers to amounts "held or owing," while the Uniform Act used the term "held and owing."

obligations and subject to escheat].) The Supreme Court of Kentucky in *Revenue Cabinet v. Blue Cross & Blue Shield* (Ky. 1986) 702 S.W.2d 433 held that the issue of whether uncashed checks, issued by medical insurers to pay subscriber benefits and premium refunds, were escheatable as property " 'held or owing' " and unclaimed " 'after it became payable or distributable' " turned on "whether the amounts in question should be classified as a claim liquidated or unliquidated in amount." (*Id.* at p. 434.) The court stated that "[o]bligations to pay are intangible property *so long as the amount due is certain and liquidated*." (*Id.* at p. 435, italics added.) The Alabama Supreme Court has found that unnegotiated conditional insurance settlement drafts were unliquidated claims and therefore not " 'moneys held and owing . . . unclaimed and unpaid' " under its version of the Uniform Act. (*Aetna Casualty & Surety v. State ex rel. Eagerton* (Ala. 1982) 414 So.2d 455, 460.) Appellants present no contrary authority.

 Appellants have not pled, and admittedly cannot plead, the existence of a certain and liquidated sum payable or distributable to any presenting bank. Significantly, there is no indication that any presenting bank has ever made or pursued any such claim against BOA. Were there such identifiable and quantifiable debts due and owing by BOA, it is difficult to conceive that the sophisticated financial institutions who are the parties to these transactions could be presumed to have "abandoned" them (or how the state would then fulfill its duty under the UPL to attempt to restore the property to the true owner). (See *Douglas Aircraft Co. v. Cranston, supra*, 58 Cal.2d at p. 463.) Whether BOA receives, as Appellants complain, a "significant windfall" from the check clearing process is entirely irrelevant.

As in *Bowen*, Appellants "sought to use the UPL as the hook for imposing reverse false claims liability . . . ." (*Bowen, supra*, 126 Cal.App.4th at pp. 245–246.) As in *Bowen*, Appellants have identified no property subject to escheat to the state, and consequently cannot establish a claim under the UPL which they would be entitled to pursue in the name of the state.

## C. The CFCA Requirement of a Liquidated and Certain Claim

 Not only does Appellants' predicate UPL claim fail for this reason, but we believe that the CFCA imposes its own requirement that there be a liquidated and certain obligation otherwise owed to the state. As relevant here, the CFCA provides for damages and penalties against any person who "[k]nowingly makes, uses, or causes to be made or used a false record or statement [to conceal, avoid, or decrease] an obligation to pay or transmit money or property to the state or to any political subdivision." (Gov. Code, § 12651, subd. (a)(7).) " 'Obligation,' as used in the [CFCA], has been construed to mean a legal obligation in existence at the time the alleged false

record was filed. 'The obligation cannot be merely a potential liability: instead, in order to be subject to the penalties of the [CFCA], a defendant must have had a present duty to pay money or property that was created by a statute, regulation, contract, judgment, or acknowledgment of indebtedness. The duty, in other words, must have been an obligation in the nature of those that gave rise to actions of debt at common law for money or things owed. . . .' " (*Bowen, supra*, 126 Cal.App.4th at p. 240, quoting *U.S. v. Q Internat. Courier, Inc.* (8th Cir. 1997) 131 F.3d 770, 773; see also *American Textile Manufacturers Institute v. Limited* (6th Cir. 1999) 190 F.3d 729, 735 and cases cited therein.) "Absent a requirement that obligations must be liquidated and certain, there would 'be no way to define the scope of [reverse false claim] cases, which would seem to be as broad as any lawyer's creative impulses in defining a possible claim in the first place.' " (*Bowen*, at p. 242, quoting *U.S. ex rel. S. Prawer & Co. v. Verrill & Dana, supra*, 946 F.Supp. at p. 95, fn. 13.)

 Appellants claim that BOA had a duty to pay money or property created by statute. We find no such duty. Nor, as discussed above, could the amount of any obligation have been liquidated and certain, even if the unidentified credits could be considered a type of intangible personal property subject to escheat. Certainly no evidence was presented that the Controller has ever considered such credits as amounts due and payable to that office,[18] nor are Appellants authorized to act in its place to make such demand. The CFCA does not "deputize private attorneys general to compel government officials to do their jobs." (*Pacific Bell, supra*, 142 Cal.App.4th at p. 749.)

As in *Bowen*, Appellants "sought to use the UPL as the hook for imposing reverse false claims liability for violations that are not even punishable under the UPL unless the violator is given notice and an opportunity to correct the alleged violations." (*Bowen, supra*, 126 Cal.App.4th at p. 246.) We find that Appellants fail to state a cause of action under either the UPL or the CFCA, and that the trial court properly sustained the demurrer without leave to amend.

---

[18] Appellants did not allege that the Controller gave notice to BOA that it failed to report or deliver property subject to escheat under the UPL. The parties have not raised here, and did not raise in the trial court, the significance, if any, of the failure of the Controller to make any demand upon BOA under Code of Civil Procedure section 1576, subdivision (c) for either reporting or delivery of the sums Appellants contend are subject to escheat. Both in *Bowen* and in *Pacific Bell* the reviewing court noted that the qui tam plaintiffs sought to impose liability under the CFCA for violations of the UPL not punishable under those circumstances. Since the issue is not properly before us, we likewise "need not consider the potential implications of a collision between the notice provisions of the UPL and a reverse false claim action under the [CFCA]." (*Pacific Bell, supra*, 142 Cal.App.4th at p. 746.)

### III. DISPOSITION

The judgment is affirmed.

Jones, P. J., and Needham, J., concurred.