Filed 12/4/25  City of Moreno v. DeSantis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF MORENO *ex rel.* JASON HUNTER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>TOM DeSANTIS et al.,<br><br>Defendants and Respondents. | D085013<br><br><br>(Super. Ct. No. CVRI2205666) |

APPEAL from a judgment of the Superior Court of Riverside County, Eric A. Keen, Judge.  Affirmed.

Law Office of Chad D. Morgan and Chad D. Morgan for Plaintiff and Appellant.

Colantuono, Highsmith & Whatley, Holly O. Whatley and Liliane M. Wyckoff, for Defendant and Respondent Yxstian Gutierrez.

Bobko Law and Patrick K. Bobko for Defendant and Respondent Paul Early.

Larson Law Firm, Stephen G. Larson, A. Alexander Lowder and Jasmine M. Johnson, for Defendant and Respondent Tom DeSantis.

Relator Jason Hunter appeals from the judgment of dismissal after the trial court sustained without leave to amend the separate demurrers of defendants Tom DeSantis, Yxstian Gutierrez, and Paul Early (sometimes collectively, Defendants) to Hunter's second amended complaint (SAC). Hunter asserted a single cause of action under the California False Claims Act (Gov. Code, § 12650[1] et seq; CFCA). He alleged Defendants conspired to engage in the theft of public funds when, allegedly without the knowledge of the Moreno Valley City Council (City Council) of the city of Moreno Valley (City), they negotiated the "Comprehensive General Release and Settlement Agreement" (Settlement Agreement) between the City, on the one hand, and City Manager DeSantis, on the other. The Settlement Agreement was signed by Gutierrez, the City's then Mayor, and approved as to form by Early, on behalf of the City Attorney's Office. Under the Settlement Agreement, DeSantis received what Hunter alleges is a "grossly inflated severance package" pursuant to DeSantis's April 2019 employment agreement with the City (Employment Agreement), after announcing his retirement as City Manager.

In Defendants' demurrers to the SAC, which, according to Hunter, "were largely duplicative of each other," they advanced several arguments including that the severance package did not qualify as a "claim" under the CFCA because it was "compensation for employment" (§ 12650, subd. (b)(2)); and that the information related to the false claim was already in the public domain and thus the jurisdictional bar applied (§ 12652, subd. (d)(3)(A)). The trial court ruled the severance package did not qualify as a "claim" under the CFCA, and therefore did not address whether the jurisdictional bar—or any

---

[1]    All undesignated statutory references are to the Government Code.

of Defendants' other arguments, for that matter—applied as a separate ground to sustain the demurrers.

On appeal, Hunter contends "compensation for employment" under section 12650, subdivision (b)(2) does not include employee severance. He also contends the jurisdictional bar does not apply because he was the "original source" of the public information on which he bases his CFCA cause of action. (§ 12652, subd. (d)(3)(B).)

We conclude the trial court lacked jurisdiction based on the public disclosure of "substantially the same allegations or transactions" made by Hunter in the current lawsuit. (§ 12652, subd. (d)(3)(A).) It is thus unnecessary to address any other contentions of the parties, including whether the money DeSantis received under the Settlement Agreement was "compensation for employment." (§ 12650, subd. (b)(2).) Affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The SAC*

The operative complaint alleged on December 10, 2019, City Manager DeSantis gave notice of his intent to retire as City Manager. The official minutes[2] of the December 10 City Council meeting show all five City Council members were present for the closed session: Gutierrez (Mayor), Victoria Baca (Mayor Pro Tem), David Marquez, Ulises Cabrera, and Carla Thornton. Following the closed session, Early, on behalf of the City Attorney, reported that "the City Council accepted notice of City Manager DeSantis' retirement" and appointed a new interim City Manager "effective immediately."

---

[2] The official minutes were attached as an exhibit to DeSantis's request for judicial notice in support of his demurrer to the SAC. (Evid. Code, § 452, subd. (b); *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 9, fn. 5 (*Evans*) [city council minutes may be judicially noticed].)

The SAC further alleged that also on December 10, 2019, Defendants—purportedly without the knowledge of the full City Council—"worked out a secret deal" related to DeSantis's retirement. Under the Settlement Agreement executed by Defendants, DeSantis would separate from City employment " 'without cause,' " as provided in Section 4[3] of his Employment Agreement, effective July 24, 2020. Under the Settlement Agreement, DeSantis would receive a severance package worth over $300,000 and would remain on the City's payroll up until the date of separation, allowing him to continue "receiv[ing] benefits and accrue service time toward his pension." The SAC alleged the severance package was "fraudulently obtained monies in return for nothing of substantial value"; and that Defendants signed the Settlement Agreement "knowingly and fraudulently" to "convey it as a legitimate document" to the City's Finance Department.

On the same date[4] DeSantis announced his retirement and Defendants executed the (secret) Settlement Agreement, Hunter made a request under the Public Records Act (§ 7921.000 et seq.) for "a copy of any settlement agreement reached between defendant DeSantis and the City . . . regarding DeSantis's seemingly abrupt departure." On December 26, 2019, Hunter

---

[3] We note the Employment Agreement is not part of the record on appeal. Without citing any legal authority for support, Hunter claims the allegations in the SAC regarding DeSantis's Employment Agreement, including its terms, "should be credited." We are not required, however, to accept " 'contentions, deductions or conclusions of fact or law' " as true. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*); accord, *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808 [" 'conclusory allegations will not withstand demurrer' "].)

[4] The record shows the closed meeting of the City Council did not begin until 5 p.m. on December 10, 2019, and Mayor Gutierrez reconvened the City Council from its closed session at 6:04 p.m.

received a copy of the Settlement Agreement. Less than two months later, City resident Debra Craig filed a "reverse validation complaint" against the City to obtain records and "issue a Brown Act[5] cure and correct letter to the City" (Craig Action). Hunter assisted Craig in her lawsuit.

In the instant case, Hunter, on behalf of the City,[6] sought treble damages against Defendants (§ 12651, subd. (b)); compensation as relator in a certain percentage, based on any recovery in the action (§ 12652, subd. (g)(3)); and his attorney costs and expenses (*id.*, subd. (g)(8)).

B. *Settlement Agreement*

The Settlement Agreement[7] is between DeSantis, on the one hand, and the entities with which he was involved in as City Manager, on the other.[8] The Settlement Agreement's recitals provided he has been City Manager since 2017, and was then working for the City under an amended employment contract dated April 16, 2019 (i.e., the Employment Agreement).

_____

5    The Ralph M. Brown Act (§ 54950 et seq.).

6    The City recognized Hunter had the legal authority to maintain this action in its name, but formally disclaimed any interest in the lawsuit. (See § 12652, subd. (c)(7)(D)(ii).)

7    The Settlement Agreement was attached as an exhibit to Early's request for judicial notice in support of his demurrer to the SAC and his motion to strike. (Evid. Code, § 452, subds. (c), (h); *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 666, fn. 2 [judicial notice of a settlement agreement is appropriate, "as there is and can be no factual dispute concerning the contents of the agreement[ ]"].)

8    The City entities included the Moreno Valley Housing Authority, the Moreno Valley Community Services Districts, "and all of their boards, bureaus, officers, agents and employees."

Among other terms, the Settlement Agreement provided DeSantis would "irrevocab[ly] retire[ ]" and his retirement would be " 'without cause' "; his employment "would end effective close of business on July 24, 2020"; and on that date, the City would pay him "(in a net amount which reflects deduction of standard tax withholdings) as payment in full of the severance amounts due pursuant to Paragraph 4.2 of the Employee's employment contract, an amount equal to four (4) months' salary and benefits."

The Settlement Agreement also included non-disparagement clauses and a mutual release of all claims and potential claims; a provision preventing the parties from voluntarily disclosing the terms of the Settlement Agreement; and another provision stating the Settlement Agreement "may be subject to disclosure upon request pursuant to the Public Records Act," and that nothing in the Settlement Agreement prevented such disclosure.

C. *Procedural History*

Hunter filed his original complaint against Defendants in December 2022, alleging one cause of action under the CFCA. He filed a first amended complaint (FAC) in May 2023. Defendants separately demurred to the FAC. The trial court heard only Early's demurrer, which it sustained with leave to amend.

In September 2023, Hunter filed the SAC, alleging the same cause of action. Defendants separately demurred, with Early also filing a motion to strike. The trial court sustained the three demurrers without leave to amend. As with Hunter's previous complaint, the court found the SAC "alleges throughout that the Settlement Agreement was a 'severance package' for DeSantis and relates to his 'Employment Agreement' " and "beyond the reach of the CFCA." The court found Early's motion to strike

6

portions of the SAC moot, entered judgment for Defendants, and ruled they were the "prevailing parties" entitled to costs of suit and attorney fees. (§ 12652.)

## DISCUSSION

### A. *Standard of Review and Pleading Requirements*

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' [Citation.] 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' " (*San Diego City Firefighters, Local 145 v. Board of Admin. of San Diego City Emples. Ret. Sys.* (2012) 206 Cal.App.4th 594, 605 (*San Diego City Firefighters*), quoting *Carman v. Alvord* (1982) 31 Cal.3d 318, 324 (*Carman*).) In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable" (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2021) 25 Cal.4th 809, 814), but we do not consider " ' "contentions, deductions or conclusions of fact or law" ' " (*Zelig, supra*, 27 Cal.4th at p. 1126).

If, as here, the trial court sustained the demurrer without leave to amend, " 'we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect.' " (*San Diego City Firefighters, supra*, 206 Cal.App.4th at p. 606.)

A CFCA action is subject to " 'heightened fraud-like pleading requirements.' " (*State of California ex rel. McCann v. Bank of America, N.A.* (2011) 191 Cal.App.4th 897, 906 (*McCann*).) " ' "As in any action sounding in fraud, the allegations of a [CFCA] complaint must be pleaded with particularity. The complaint must plead ' "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he [or she] obtained thereby." ' " ' " (*State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.* (2023) 90 Cal.App.5th 1119, 1136–1137 (*Edelweiss*).)

B. *Judicial Notice*

The parties made several requests for judicial notice in the trial court. It appears, however, that the court never expressly ruled on any of these requests. As such, we will consider them granted. (See Evid. Code, § 456 ["If the trial court *denies* a request to take judicial notice of any matter, the court shall at the earliest practicable time so advise the parties and indicate for the record that it has denied the request." (Italics added.)]; *Aaronoff v. Martinez-Senftner* (2006) 136 Cal.App.4th 910, 919 [relying on Evidence Code section 456 to conclude the trial court impliedly granted a request for judicial notice, as the record contained "no indication the request for judicial notice was denied"].)

On appeal, Early seeks judicial notice of section 2.16.030 of the City's Municipal Code, identifying the specific functions of the Office of the City Attorney. We now deny that request because it is unnecessary to our resolution of this appeal. (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [refusing to take judicial notice of materials not "necessary, helpful, or relevant"].)

8

Hunter asks us to take judicial notice of portions of the legislative history of Assembly Bill No. 1196 (2009-2010 Reg.Sess.), which added section 12650, subdivision (b)(2) among other provisions to the Government Code, as well as Assembly Bill No. 2492 (2011-2012 Reg.Sess.), which further amended state law in 2012 to conform to federal law.  We will grant this request.  (See Evid. Code, §§ 451, subd. (a), 452, subd. (b).)

C.  *The CFCA*

The purpose of the CFCA " 'is to protect the public fisc.' "  (*State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1297.)  Enacted in 1987, the CFCA supplemented " 'governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities.' "  (*San Francisco Unified School Dist. Ex rex. Contreras v. First Student, Inc.* (2014) 224 Cal.App.4th 627, 637.)

Under the CFCA, any "person" who submits a false claim to the state or a political subdivision may be sued for treble damages and civil penalties.  (§§ 12650, subd. (b)(9); 12651, subd. (a).)  As relevant here, acts prohibited under the CFCA include knowingly presenting or causing to be presented a "false or fraudulent claim for payment or approval," and knowingly making, using, or causing to be used a "false record or statement material to a false or fraudulent claim."  (§ 12651, subd. (a)(1), (2).)

A "[c]laim" is defined under the CFCA to mean any request or demand "presented to an officer, employee, or agent of the state or of a political subdivision," "whether under a contract or otherwise, for money, property, or services."  (§ 12650, subd. (b)(1)(A).)  " 'Political subdivision' includes any city, city and county, county, tax or assessment district, or other legally authorized local governmental entity with jurisdictional boundaries."  (*Id.*, subd. (b)(6).)

9

The CFCA is to be "liberally construed and applied to promote the public interest." (§ 12655, subd. (c).)

D. *Public Disclosure*

      1. <u>Guiding Principles</u>

"The [CFCA], like its federal counterpart (31 U.S.C. § 3729 et seq.[; FCA]), erects a jurisdictional bar to qui tam actions that do not assist the government in ferreting out fraud because the fraudulent allegations or transactions are already in the public domain." (*State of California ex rel Alan Grayson v. Pacific Bell Telephone Co.* (2006) 142 Cal.App.4th 741, 748 (*Grayson*).) "The jurisdictional bar is 'triggered whenever a plaintiff files a qui tam complaint containing allegations or describing transactions "substantially similar" to those already in the public domain so that the publicly available information is already sufficient to place the government on notice of the alleged fraud.' [Citation.] The fraud, however, need not be explicitly alleged to constitute public disclosure. [Citation.] 'Of course, whether or not the Government was actually pursuing the allegations . . . is irrelevant to the question of whether said allegations were "publicly disclosed" ' for purposes of the FCA [or CFCA]. All that is required is a finding that the publicly disclosed allegations were sufficient to put the government on notice of the alleged FCA [or CFCA] violations.' " (*Grayson*, at p. 748.)

This rule is codified in section 12652, subdivision (d)(3)(A) (12652(d)(3)(A)), which provides in relevant part: "The court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in any of

the following:  [¶]  . . .  [¶] (iii) The news media."[9]  This statute does not apply, however, if "the person bringing the action is an original source of the information."  (§ 12652, subd. (d)(3)(B) (12652(d)(3)(B).)

As relator, Hunter "bears the burden of establishing that the exercise of the court's jurisdiction is proper."  (See *Grayson*, *supra*, 142 Cal.App.4th at p. 748.)  We independently review whether Hunter has satisfied his burden of overcoming the jurisdictional bar in section 12652(d)(3)(A).  (See *Mao's Kitchen, Inc. v. Mundy* (2012) 209 Cal.App.4th 132, 147 (*Mao's Kitchen*); accord, *Grayson*, at p. 748.)  In conducting such review, "we must determine first whether allegations or transactions described [in the SAC] are substantially similar to information already in the public domain and, if so, secondly whether the relator is an original source of the information exposing the fraud."  (*Grayson*, at p. 749.)

2. Analysis

On September 30, 2020, an internet news article reported on substantially similar allegations and transactions at issue in Hunter's SAC. Titled, "It pays to be City Manager in Moreno Valley," the Beacon Project[10]

---

9    The federal counterpart to section 12652(d)(3)(A) is subdivision (e)(4)(A) of section 31 United States Code section 3730.  It provides:  "The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—[¶] (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; [¶] (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or [¶] (iii) from the news media."  (31 U.S.C. § 3730, subd. (e)(4)(A).)

10    The Beacon Project is a student journalism initiative supported by the University of Southern California Annenberg School for Communication and Journalism.

11

news article (News Article) referenced the Settlement Agreement and the Craig Action. The News Article questioned the "closed-door dealings" of the City Council on December 10, 2019, including the legality of the "money paid out to DeSantis when he left the job under the label of 'retirement' "; suggested he should have been paid as if he had "quit instead of being terminated," which would have entitled him to collect a salary for 45 days, in addition to any accrued vacation or sick time, but not a lump sum severance payment; and quoted Hunter.

"The term 'news media' is not defined anywhere in the CFCA." (*Edelweiss*, *supra*, 90 Cal.App.5th at p. 1148.) "When a term goes undefined in a statute, we give the term its 'broad ordinary meaning." (*Ibid.* [" 'news media' must be interpreted 'to encompass the many ways in which people in the modern world obtain . . . news, including from publicly available websites on the Internet' "].)

We conclude the News Article is a source of public disclosure of "substantially the same allegations or transactions" Hunter has alleged in the current action. (§ 12652(d)(3)(A)(iii).) The News Article preceded Hunter's complaint by more than two years. As such, Hunter's action is barred unless he can show he is the "original source" of the information.

Under section 12652, subdivision (d)(3)(C) (12652(d)(3)(C)), " 'original source' means an individual who either: [¶] (i) Prior to a public disclosure under subparagraph (A), has voluntarily disclosed to the state or political subdivision the information on which allegations or transactions in a claim are based. [¶] (ii) Has knowledge that is independent of, and materially adds to, the publicly disclosed allegations or transactions, and has voluntarily provided the information to the state or political subdivision before filing an action under this section."

12

Here, although not a model of clarity (as Hunter himself admits), he contends he is the original source of information in the News Article subject to the CFCA because he "pitch[ed]" the story about DeSantis's alleged "illegal settlement agreement" to its author; and that, until he "filed this action, there had not been a disclosure of the specific allegations of fraud[11] on which this action is based, i.e., the fact that the City Council did not approve the settlement agreement." We disagree.

First, Hunter fails to provide any record cite, and we have found none in our independent review of the record, that he "pitch[ed]" the News Article to its author. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [a brief *must* "[s]upport any reference to a matter in the record by a citation to the volume and page number where the matter appears"]; *Durate v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [" 'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' [Citations.] If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived [or forfeited]."].)

Moreover, as noted, the author states that she obtained the information for the News Article through her own Public Records Act requests; and although it briefly mentions Hunter and quotes him sparingly, there is no suggestion that Hunter was an "original source" of information for her story.

Second, the allegation that, until he filed this action, there had been no public disclosure of the allegations "of fraud on which this action is based,

---

11    For disclosure, the proper test is not whether there are "specific allegations of fraud on which [an CFCA] action is based," as Hunter posits, but rather whether "substantially the same allegations or transactions alleged in the action" were publicly disclosed. (§ 12652(d)(3)(A).)

13

i.e., the fact that the City Council did not approve the settlement agreement," is contradicted by judicially noticed facts. (See *Evans*, *supra*, 38 Cal.4th at p. 20 ["a demurrer assumes the truth of the complaint's properly pleaded allegations, but not of mere contentions or assertions contradicted by judicially noticeable facts"]; accord, *Smyth v. Berman* (2019) 31 Cal.App.5th 183, 190 ["We . . . accept as true all materials properly 'subject to judicial notice,' and disregard any allegations in the operative complaint inconsistent with the judicially noticed facts."].)

The News Article quotes Hunter as saying, " 'Most of the council members didn't realize that [DeSantis is ] gonna be on the payroll for the next 12 months,' " and the " 'deal was *only* between the mayor and Tom [DeSantis], and the city attorney." (Italics added.) This disclosure predates Hunter's action by years, as we have noted, and may help explain why Hunter did not reference the News Article in his SAC. Instead, he alleged "[t]here have no public disclosures of the allegations or transactions contained [in the SAC] that would otherwise bar jurisdiction"; and that "Craig's complaint [in the Craig Action] was the *only* basis of any previous public disclosure of the alleged wrongdoing related to defendant DeSantis' departure from the City." (Italics added.) The facts subject to judicial notice show otherwise.

Third, the SAC is bereft of properly pleaded factual allegations that Hunter voluntarily disclosed information related to the purportedly fraudulent Settlement Agreement *before* the News Article came out, or *before* he filed his own his complaint years later, as required by section 12652(d)(3)(C)(i). Nor are there sufficient, if any, allegations that he had knowledge that was "independent of, and materially add[ed] to," the News Article. (*Id.*, subd. (d)(3)(C)(ii).) To the extent there was purported fraud, the

14

City knew about it on December 10, 2019, when its Mayor signed the Settlement Agreement and the City's legal counsel approved it as to form.

We conclude Hunter's SAC fails to pass muster under the " 'heightened fraud-like pleading requirements' " for a CFCA action. (See *McCann*, *supra*, 191 Cal.App.4th at p. 906; accord, *Edelweiss*, *supra*, 90 Cal.App.5th at pp. 1136–1137; see also *People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 564 [the public disclosure requirement is "intended to bar parasitic or opportunistic actions by persons simply taking advantage of public information without contributing to or assisting in the exposure of the fraud"]; accord, *Mao's Kitchen*, *supra*, 209 Cal.App.4th at p. 146 [" ' "[w]here there has been a public disclosure[,] the governmental authority is 'already in a position to vindicate society's interests, and a qui tam action would serve no purpose' " ' "].)  We thus conclude the trial court properly sustained Defendants' demurrers.

E.  *Leave to Amend*

In reviewing whether the trial court "abused its discretion" when it sustained Defendants' demurrers without leave to amend (see *San Diego City Firefighters, supra*, 206 Cal.App.4th at p. 606), we consider whether there is a "reasonable possibility" Hunter could cure the defect with an amendment (see *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*)).  Here, because Hunter was not the "original source" of publicly disclosed information on which this action is based (§ 12652(d)(3)(B), (C)), we conclude the court properly exercised its discretion in sustaining the demurrers to the SAC without leave to amend.

Hunter nonetheless contends he should be allowed to amend his complaint for a third time and assert a new theory of liability based on the decision in *Stanson v. Mott* (1976) 17 Cal.3d 206 (*Stanson*).  *Stanson* involved

the issue of whether the use of public funds by an administrative official in support of a bond initiative was "proper informational activities" or "improper campaign expenditures" (*id.* at p. 224); and, to the extent it was the latter, whether the official was required to repay the money (*ibid.*).

*Stanson* is inapposite. Hunter has not alleged any facts indicting Defendants spent public funds to engage in any sort of campaign activity; nor has he cited to a specific code section, such as the Public Resources Code at issue in *Stanson* (*Stanson, supra,* 17 Cal.3d at p. 213), which contained a legislative mandate preventing Defendants from negotiating a settlement, and the City from paying DeSantis a severance pursuant to his Employment Agreement.

More importantly, Hunter's contention that Defendants *may* be personally liable *if* they did not exercise due care in entering into the Settlement Agreement, falls far short of his burden to show, based on properly pleaded facts (see *Zelig, supra,* 27 Cal.4th at p. 1126), that there is a "reasonable possibility" he could amend his complaint to cure the defects or state a new cause of action based on a new theory of liability (see *Yvanova, supra,* 62 Cal.4th at p. 924; cf. *Zelig,* at p. 1126 [" 'The burden of proving such reasonable possibility is squarely on the plaintiff.' "]). We therefore conclude the trial court properly exercised its discretion when it granted Defendants' demurrers without leave to amend.[12]

---

12 In light of our decision, we find it unnecessary to address the parties' other arguments on appeal including whether DeSantis's severance package under the Settlement Agreement was "compensation for employment" and therefore did not qualify as a "claim" under the CFCA. (See 12650, subd. (b)(2).)

DISPOSITION

The judgment is affirmed. Defendants to recover their respective costs of appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


CASTILLO, J.