Filed 12/12/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, <br><br> Respondent; <br><br> STATE OF CALIFORNIA ex rel. KEN ELDER, <br><br> Real Party in Interest. | A164519 <br><br> (City & County of San Francisco Super. Ct. No. CGC1957914) |
| U.S. BANK N.A., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, <br><br> Respondent; <br><br> STATE OF CALIFORNIA ex rel. KEN ELDER, <br><br> Real Party in Interest. | A164521 <br><br> (City & County of San Francisco Super. Ct. No. CGC19581373) <br><br><br> ORDER MODIFYING OPINION; AND DENYING PETITIONS FOR REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed on November 18, 2022, be modified as follows:

1

1. On page 3, line 1 of the first full paragraph, replace "Section 1511 adds an additional requirement to this general rule" with "Section 1511 adds a separate requirement to this general rule."

2. On page 14, line 9, replace the sentence "Unlike the AKS, willfulness is not an element of the CFCA provisions the banks are alleged to have violated here" with "Unlike the AKS, willfulness is not an element of the UPL provisions the banks are alleged to have violated here."

There is no change in the judgment.

Petitioners' petitions for rehearing, filed December 5, 2022, are denied.


December 12, 2022                                    POLLAK, P.J.

| | |
|---|---|
| Trial court: | San Francisco County Superior Court |
| Trial judge: | Honorable Ethan P. Schulman |
| Counsel for Petitioner JPMorgan Chasebank, N.A.: | MORGAN, LEWIS & BOCKIUS LLP<br>Douglas W. Baruch<br>Jennifer M. Wollenberg<br>Neaha P. Raol<br>Thomas M. Peterson<br>Joseph E. Floren |
| Counsel for Petitioner U.S. Bank National Association: | BUCKLEY LLP<br>James R. McGuire<br>Sarah N. Davis<br>Andrew W. Schilling (Pro Hac Vice)<br>Jackson Hagen (Pro Hac Vice) |
| Counsel for Respondent: | No appearance |
| Counsel for Amicus Curiae, Attorney General, the State of California | Rob Bonta<br>Attorney General Of California<br>Matthew Rodriquez<br>Chief Assistant Attorney General<br>Martin H. Goyette<br>Senior Assistant Attorney General<br>Jacqueline Dale<br>Supervising Deputy Attorney General<br>Brendan Ruddy<br>Deputy Attorney General |
| Counsel for Real Party in Interest Ken Elder: | SILVER GOLUB & TEITELL LLP<br>David S. Golub<br><br>DENVER LAW GROUP<br>Michael P. Denver<br><br>GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP<br>Michael S. Devorkin |

3

Filed 11/18/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., <br><br>　　Petitioner, <br><br>v. <br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, <br><br>　　Respondent; <br><br>STATE OF CALIFORNIA ex rel. KEN ELDER, <br><br>　　Real Party in Interest. | A164519 <br><br>(City & County of San Francisco Super. Ct. No. CGC1957914) |
| U.S. BANK N.A., <br><br>　　Petitioner, <br><br>v. <br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, <br><br>　　Respondent; <br><br>STATE OF CALIFORNIA ex rel. KEN ELDER, <br><br>　　Real Party in Interest. | A164521 <br><br>(City & County of San Francisco Super. Ct. No. CGC19581373) |

A qui tam plaintiff alleges that two banks violated the California False Claims Act (CFCA) by failing to report and deliver millions of dollars owing on unclaimed cashier's checks to the State of California as escheated

1

property. The two banks seek writ relief from the trial court's order overruling their demurrers to the plaintiff's complaints. We reject the banks' argument that a qui tam plaintiff may not pursue a CFCA action predicated on a failure to report and deliver escheated property unless the California State Controller (Controller) first provides appropriate notice to the banks under Code of Civil Procedure section 1576. We also conclude the plaintiff has adequately alleged that the banks were obligated to report and deliver to California the money owed on unredeemed cashier's checks, and reject the banks' argument that allowing this action to proceed violates their due process rights. We therefore will deny the banks' writ petitions.

## BACKGROUND

### 1. California's Unclaimed Property Law

"Escheat" is the "vesting in the state of title to property the whereabouts of whose owner is unknown or whose owner is unknown or which a known owner has refused to accept, whether by judicial determination or by operation of law, subject to the right of claimants to appear and claim the escheated property or any portion thereof." (Code Civ. Proc., § 1300, subd. (c).)[1] California's Unclaimed Property Law (UPL) regulates the escheatment of abandoned property to the State of California. (§ 1500 et seq.) The general rule in California, codified in section 1510, is that unclaimed intangible property escheats to California when the "last known address" of the "apparent owner" is in California. (§ 1510, subds. (a), (b)(1).) This rule is a codification of the federal priority rule for escheatment. (See § 1510, Legislative Committee com. (1968) ["Section 1510 describe[s] types of

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

abandoned intangible property that this state may claim under the rules stated in *Texas v. New Jersey* [(1965)] 379 U.S. 674."].)

Section 1511 adds an additional requirement to this general rule, stating: "Any sum payable on a money order, travelers check, or other similar written instrument (other than a third-party bank check) on which a business association is directly liable escheats to this state under this chapter if the conditions for escheat stated in Section 1513 exist and if: [¶] (1) The books and records of such business association show that such money order, travelers check, or similar written instrument was purchased in this state." (§ 1511, subd. (a)(1).) "Section 1511 adopts the rules provided in federal legislation which determines which state is entitled to escheat sums payable on money orders, travelers checks, and similar written instruments." (Law Revision Com. com. (1975) § 1511.)

The UPL requires "[e]very person holding funds or other property escheated to this state" to file an annual report with the Controller with "the name, if known, and last known address, if any, of each person appearing from the records of the holder to be the owner of any property of value of at least twenty-five dollars ($25)" subject to escheatment in California. (§ 1530, subds. (a), (b)(2), & (d).) The law also requires holders of escheated property to deliver to the Controller all unclaimed funds listed in the reports, usually in June of the following year. (§ 1532, subd. (a).)

The UPL vests the Controller with authority to examine the records of a person "if the Controller has reason to believe that the person is a holder who has failed to report property that should have been reported." (§ 1571, subd. (a).) The Controller may also bring an action "in a court of appropriate jurisdiction" to "enforce the duty of any person under this chapter to permit the examination of the records of such person," to obtain "a judicial

3

determination that particular property is subject to escheat by this state," and to "enforce the delivery of any property to the State Controller as required" under the UPL. (§ 1572, subd. (a).)

The UPL also contains a penalty provision stating that "[a]ny person who willfully fails to render any report or perform other duties, including use of the report format described in Section 1530, required under this chapter, shall be punished by a fine of one hundred dollars ($100) for each day such report is withheld or such duty is not performed, but not more than ten thousand dollars ($10,000)." (§ 1576, subd. (a).) A person must also be fined not less than $5,000 nor more than $50,000 for "willfully" refusing to pay or deliver escheated property to the Controller. (§ 1576, subd. (b).) Under section 1576, "[n]o person shall be considered to have willfully failed to report, pay, or deliver escheated property, or perform other duties unless he or she has failed to respond within a reasonable time after notification by certified mail by the Controller's office of his or her failure to act." (§ 1576, subd. (c).)

## 2. Elder's CFCA action

The qui tam plaintiff in this action, Ken Elder, sued JPMorgan Chase Bank, N.A. (JP Morgan) and U.S. Bank, N.A. (U.S. Bank) in two separate actions under the CFCA. In both actions, the complaints allege that the banks failed to deliver to the State of California millions of dollars owing on unclaimed cashier's checks that were purchased in California and subject to escheatment in California as required by the UPL. The complaints further allege that both banks submitted "knowingly false annual abandoned property reports to the State of California . . . to conceal and perpetuate its violations of the UPL." The pleadings allege that the banks have, incorrectly, taken the position that the unclaimed cashier's checks were escheated by Ohio, the banks' state of domicile, which has escheat provisions that are more

4

bank-friendly than California.[2] The complaints allege against both banks three violations of the CFCA: (1) wrongful conversion of money used or to be used by the State of California (Gov. Code, § 12651, subd. (a)(4)); (2) a "reverse" false claim for knowingly concealing and avoiding their obligation to deliver the money owed on the cashier's checks to the State of California (Gov. Code, § 12651, subd. (a)(7)); and (3) a second reverse false claim for submitting false reports to the State of California relating to their obligation to deliver the money owed on the cashier's checks to California (*ibid.*).

JP Morgan and U.S. Bank each demurred, raising several (and in some cases different) grounds for dismissal. Insofar as possible, we address their arguments collectively. First, the banks argue that the complaints do not allege that the Controller provided them notice under section 1576 advising they were in violation of the UPL, which the banks contend is a prerequisite for liability under both the UPL and the CFCA. The banks also argue that the complaints do not allege they were obligated to report and deliver the money owed on the cashier's checks to California, so that there is no basis for liability under the CFCA. Finally, the banks argue that enforcing California's UPL with regard to property that has been delivered to another state (Ohio) as escheated property would deprive them of due process of law.

The trial court initially issued tentative rulings sustaining the banks' demurrers. Citing *State of California ex rel. Bowen v. Bank of America Corp.* (2005) 126 Cal.App.4th 225 (*Bowen*), the court explained that the complaints

---

[2] According to Elder, Ohio does not require holders of unclaimed property to deliver the full amounts owing on unclaimed property, but allows the holders to pay 10 percent of the aggregate value of the unclaimed funds they report owing. Ohio also exempts business-to-business transactions from escheatment. And, with respect to cashier's checks, Ohio has a five-year waiting period before an uncashed cashier's check is deemed abandoned, two years longer than California's waiting period.

fail because they do not allege the Controller provided notice of a potential UPL violation, as required by section 1576, subdivision (c).

After the court issued its tentative ruling, the California Attorney General requested the opportunity to appear at the demurrer hearing to contest the ruling. At the hearing, the Attorney General argued that the court's ruling would have a "negative impact on cases beyond this." The court allowed the Attorney General to file a supplemental brief, and allowed the banks to file responses.

After receiving the briefing, the trial court issued an order overruling the banks' demurrers. The court explained that *Bowen*'s reference to section 1576, subdivision (c), in a decision addressing the obligation to report "reconveyance" fees as escheated property, was "nonbinding dictum" and could be disregarded, as could the references made to *Bowen* in subsequent appellate court cases. After analyzing the statutory schemes of the UPL and CFCA, the court concluded that notice from the Controller is not a prerequisite to the prosecution of an action under the CFCA. The court also rejected the banks' remaining arguments and overruled the demurrers in their entirety.

JP Morgan and U.S. Bank each filed a petition for writ of mandate in this court challenging the trial court's order. We consolidated the two petitions for briefing and oral argument and issued an order to show cause. Elder filed a formal return, to which the banks each filed a reply. We also requested and received an amicus curiae brief from the Attorney General, and both banks filed a response to the amicus brief. We have also received an amicus brief submitted jointly by the Chamber of Commerce of the United States of America, the California Chamber of Commerce, and the California Bankers Association.

## DISCUSSION

### 3. Standard of Review and CFCA Actions

Appellate courts have "extreme reluctance" to review demurrer rulings in writ proceedings (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 851). Nonetheless we do so in this matter because the petitions present unaddressed issues of "significant legal impact" involving the interplay between the CFCA and UPL. (*Ibid.*) In a writ proceeding, " ' "the ordinary standards of demurrer review still apply," ' under which we review de novo an order overruling a demurrer." (*Sirott v. Superior Court* (2022) 78 Cal.App.5th 371, 380.) We "accept[] as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled." (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971.)

The CFCA is intended "to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities." (*Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488, 494.) The CFCA "permits the recovery of civil penalties and treble damages from any person who '[k]nowingly presents or causes to be presented [to the state or any political subdivision] . . . a false claim for payment or approval.'" (*Ibid.*, quoting Gov. Code, § 12651, subd. (a)(1).) False claims include "possession, custody, or control of public property or money used or to be used by the state or by any political subdivision and knowingly deliver[ing] or caus[ing] to be delivered less than all of that property" (Gov. Code, § 12651, subd. (a)(4)) and "knowingly and improperly avoid[ing], or decreas[ing] an obligation to pay or transmit money or property to the state or to any political subdivision." (Gov. Code, § 12651, subd. (a)(7).) The CFCA also contains qui tam provisions authorizing private relators to bring actions on behalf of the

7

State of California to seek redress for a CFCA violation. (Gov. Code, § 12652.) " 'The driving force behind the false claims concept is the providing of incentives for individual citizens to come forward with information uniquely in their possession and to thus aid the Government in [ferreting] out fraud.' " (*State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220, 1231.) The CFCA " 'should be given the broadest possible construction' " consistent with its purpose. (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 801.)

### 4. Controller Notice

The banks contend that their demurrers must be sustained because the complaints do not allege that the Controller provided them with prior notice that they were holding funds subject to escheat. They assert there can be no liability under the CFCA for a failure to report or deliver escheated property under the UPL unless the failure is punishable under section 1576 of the UPL. As noted above, section 1576 imposes a penalty for "willfully" failing to deliver or report escheated property to California, and a person acts "willfully" only if "he or she has failed to respond within a reasonable time after notification by certified mail by the Controller's office of his or her failure to act." (§ 1576, subd. (c).)

The banks argue that the court in *Bowen* held that a plaintiff may not allege a CFCA violation predicated on the failure to report or deliver escheated property absent notice from the Controller under section 1576. Alternatively, they contend that even if *Bowen* did not hold that Controller notice is a prerequisite to a CFCA action, the same conclusion should be reached independently. We disagree with both contentions.

In *Bowen* a qui tam plaintiff sued a group of banks under the CFCA alleging that the banks failed to report as escheated property unearned and

8

unreturned reconveyance fees they were holding. The court there held only that the reconveyance fees in question "were not subject to escheat" because, during the time period in question, there was no "certain and liquidated" obligation to report those fees as escheated property. (*Bowen, supra,* 126 Cal.App.4th at pp. 230, 239, 240–242.) The statutory provision requiring the refund of unwarranted reconveyance fees (Civ. Code, § 2941, subd. (j)) had not yet been enacted at the time the banks allegedly failed to report (*Bowen, supra,* at p. 241), and the plaintiff did not allege "that any of the contracts provided for the specific remedy of disgorgement of the reconveyance fees, or that any judgment was entered to that effect." (*Id.* at p. 230.)

The court in *Bowen* referenced the Controller notice requirement of section 1576 at two points in its opinion. In the background section of the opinion laying out the overall structure and mechanics of the statutory scheme, the court quoted section 1576 when describing penalties for willful failure to report under the UPL. (*Bowen, supra,* 126 Cal.App.4th at p. 235.) The court also referred to section 1576 in the conclusion section of the opinion when it observed: "In this case, plaintiff not only lacked standing to pursue a breach of contract claim or a class action to recover the disputed reconveyance fees, *he sought to use the UPL as the hook for imposing reverse false claims liability for violations that are not even punishable under the UPL unless the violator is given notice and an opportunity to correct the alleged violations. Despite the lack of any allegation that defendants received such notice from the Controller,* plaintiff contends defendants' obligation to refund the reconveyance fees was both liquidated and certain because plaintiff is seeking only the disgorgement of the reconveyance fees. Plaintiff's waiver of other damages, however, fails to establish that an enforceable

9

obligation to refund the fees existed when the allegedly false reports were filed." (*Id.* at pp. 245–246, italics added.)

Focusing on the italicized language, the banks contend that *Bowen* established that Controller notice is a prerequisite for alleging a CFCA cause of action premised on a UPL violation. We disagree. The court's reference to violations that are "not even punishable under the UPL" absent notice and an opportunity to correct was to penalties that are not at issue in this case, those mentioned in the background section of the opinion. "An appellate decision is not authority for everything said in the court's opinion but only 'for the points actually involved and actually decided.' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.) The court considered and decided only that the plaintiff failed to allege an obligation for the banks to report reconveyance fees to the Controller. It did not hold that there can be no such obligation without prior notice from the Controller.

*Bowen* was cited in two subsequent appellate court cases, but neither of those cases held that notice from the Controller is a prerequisite to a CFCA action. In *State of California ex rel. Grayson v. Pacific Bell Telephone Co.* (2006) 142 Cal.App.4th 741, the court held that the CFCA's jurisdictional "public disclosure bar" justified dismissal of a complaint alleging telecommunication companies failed to deliver to California balances on prepaid telephone cards. (*Id.* at pp. 744–754, 757.) While noting that *Bowen* had referenced the Controller-notice provision of section 1576, the court explained its decision did not depend on Controller notice: "We need not consider the potential implications of a collision between the notice provisions of the UPL and a reverse false claim action under the FCA because, in this case, the jurisdictional bar contained in the FCA precludes plaintiff's qui tam complaint." (*Id.* at p. 746.) In *State of California ex rel. McCann v. Bank of*

10

*America, N.A.* (2011) 191 Cal.App.4th 897, 914, the court affirmed dismissal of a CFCA complaint alleging that "unidentified credits" accumulated from a bank's check clearing process were subject to escheat as unclaimed property. (*Id.* at pp. 902–903.) As with *Grayson*, the court in *McCann* explicitly stated its decision did not turn on section 1576: "The parties have not raised here, and did not raise in the trial court, the significance, if any, of the failure of the Controller to make any demand upon [Bank of America] under . . . section 1576, subdivision (c) for either reporting or delivery of the sums Appellants contend are subject to escheat." (*Id.* at p. 914, fn. 18.)

Prior notice from the Controller is not a prerequisite of liability under the CFCA. Imposition of the penalties imposed by section 1576 for willful violations do require prior notice, but the present complaints do not seek to impose those penalties. The CFCA provisions allegedly violated by the banks proscribe certain acts without reference to whether the banks' conduct was willful or punishable under section 1576. The complaints allege violations of subdivision (a)(4) of section 12651 of the Government Code, which proscribes the possession of property used or to be used by the government and knowingly delivering less than all that property to the government. The complaints also allege violations of subdivision (a)(7) of section 12651—the "reverse false claim" provision—which prohibits false statements, concealment, or improper avoidance of obligations to the state. None of these provisions are dependent on prior notice from the Controller or on the proscribed conduct being punishable under another predicate statute, such as the UPL.

Likewise, the UPL contains no provision stating that the Controller must provide notice that a person has failed to report or deliver escheated property to the State before liability can be imposed for submitting a false

11

claim in violation of the CFCA. Contrary to the banks' argument, notice is not an "element" that "must be pled and proven in the CFCA case." The notice requirement of section 1576 is a prerequisite only for imposition of the penalties provided in that statute for willful violations of the UPL.

The UPL itself contains numerous other remedial provisions addressing the failure to comply with its reporting and delivery requirements, none of which are conditioned on prior notice. The Controller may without prior notice institute a civil action for an order to examine a person's records and compel delivery of property to the Controller. (§ 1572, subds. (a)(1), (a)(3).) Violators of the reporting or delivery deadlines must pay interest on the escheated property at 12 percent per annum, without having received prior notice from the Controller of a violation. (§ 1577, subd. (a).) And any business association that sells travelers checks, money orders, or other similar written instruments and willfully fails to maintain a record of those purchases is liable for a $500 civil penalty. (§ 1581, subd. (c).) Moreover, the Attorney General is authorized to bring an action "for the purpose of having it adjudged that title to real or personal property, to which the State has become entitled by escheat, is vested in the State." (Gov. Code, § 12541.) The Controller and Attorney General need not provide any advance notice before bringing such actions. (*Ibid.*)

The Legislature previously made clear that liability under the CFCA operates independently of the UPL's enforcement provisions. In 1999, the Legislature enacted a temporary amnesty program for delinquent holders who did not deliver escheated property to the state by waiving the mandatory interest owed on undelivered funds. (See § 1577.5, subd. (a).) The amnesty statute contained a provision stating that "[n]othing in this section shall preclude liability" under the CFCA. (§ 1577.5, subd. (f).) Although the

12

amnesty program expired in 2002, the provision addressing CFCA liability indicates that the Legislature believed liability under the CFCA was not tied to liability under the UPL, and that CFCA liability could attach when a person failed to report or deliver unclaimed funds to the state.

The provisions of the CFCA that the present complaints allege the banks violated require the false claims to have been made "knowingly." (Gov. Code, § 12651, subds. (a)(4), (a)(7).) Under the CFCA, "knowingly" means that one "[h]as actual knowledge of the information," "[a]cts in deliberate ignorance of the truth or falsity of the information," or "[a]cts in reckless disregard of the truth or falsity of the information." (Gov. Code, § 12650, subd. (b)(3).) "The definition of 'knowingly' in the federal FCA is the same as the definition in the CFCA, and, in adopting the federal FCA definition, '. . . Congress attempted "to reach what has become known as the 'ostrich' type situation where an individual has 'buried his head in the sand' and failed to make simple inquiries which would alert him that false claims are being submitted." [Citation.] Congress adopted "the concept that individuals and contractors receiving public funds have some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek." ' " (*San Francisco Unified School Dist. ex rel. Contreras v. First Student, Inc.* (2014) 224 Cal.App.4th 627, 646.) Under the more stringent willful standard applicable to section 1576, which the banks seek to incorporate into the CFCA provisions applicable here, a person would be immune from CFCA liability even if knowingly misreporting or failing to deliver escheated property to the state, so long as the Controller had not notified them of the violation.

The banks seek support for their position in federal False Claims Act cases that are predicated on a violation of the Anti-Kickback Statute (AKS).

13

As one district court explained, "To state an FCA claim based on an AKS violation, a plaintiff must allege that the defendant acted with the requisite scienter under the AKS: a 'knowing[] and willful[]' violation." (*United States ex rel. Suarez v. AbbVie, Inc.* (N.D. Ill. Sept. 30, 2019, No. 15 C 8928) 2019 U.S. Dist. Lexis 169090, at p. *42, citing 42 U.S.C. § 1320a–7b(b)(1), (2).)[3] The comparison to AKS cases hardly supports the inference that a willfulness requirement should be read into the UPL provisions applicable here. Rather, the comparison underscores the difference between statutory provisions that do and do not add willfulness to the "knowingly" standard. Unlike the AKS, willfulness is not an element of the CFCA provisions the banks are alleged to have violated here.

Indeed, incorporating such an additional requirement would defeat the very purpose of the CFCA provisions in question. As the trial court observed, requiring Controller notice as a prerequisite to a CFCA action "would have the perverse effect of rewarding defendants who deliberately defraud the State. If a defendant knowingly submits false reports, and the Controller is not otherwise made aware that it has understated or concealed its obligation to deliver funds to the State, by definition the Controller *could not* provide written notification to the defendant of its failure to comply. Such a result would severely undermine the [C]FCA, the core purpose of which, like the

---

[3] See also *Gonzalez v. Fresenius Medical Care North America* (5th Cir. 2012) 689 F.3d 470, 476 [relator did not demonstrate defendants violated FCA by falsely certifying compliance with AKS because relator "did not provide legally sufficient evidence that [defendants] knowingly and willfully entered into an illegal kickback scheme"]; *United States ex rel. Osheroff v. Tenet Healthcare Corp.* (S.D. Fla. July 12, 2012, No. 09-22253-CIV) 2012 U.S. Dist. Lexis 96434, at p. *36 ["To the extent Relator can properly plead violations of AKS . . . in its amended complaint together with Defendants' certifications of compliance with AKS . . . , such allegations would suggest knowledge of a false certification under the FCA."].

federal FCA on which it was based, is 'to encourage suits by individuals with valuable knowledge of fraud *unknown to the government*.' "

The banks assert that "if the Controller is unaware of the potential violation and learns of the conduct through a qui tam filing, the Controller can make the necessary assessment and issue notice after the filing if she agrees that a punishable UPL violation has occurred." But if Controller notice were a prerequisite to a CFCA cause of action, there would never be an incentive for an individual to file a CFCA complaint. Should the plaintiff file the action under seal before notice is given to the defendant, the defendant could immediately cure the underpayment and avoid liability under both the UPL and CFCA. If a plaintiff waited to file suit until after the Controller provided notice, such an action would be subject to the jurisdictional bar of actions based upon allegations or transactions that are the "subject of a civil suit or an administrative civil money penalty proceeding in which the state or political subdivision is already a party." (Gov. Code, § 12652, subd. (d)(2); see also *Gately v. City of Port Hueneme* (C.D.Cal. Oct. 2, 2017, No. CV 16-4096-GW(JEMX)) 2017 U.S. Dist. Lexis 222662, at p. *28, fn. 10 [false claims action barred because administrative civil money penalty proceeding began with agency's demand for repayment, "which came two months before Plaintiffs first filed his complaint"].)

We therefore consider it very clear that prior notice of the violation from the Controller is not a prerequisite of a CFCA action predicated on a violation of the UPL.

## 5. Established Obligation

The banks argue that the complaints fail for a separate reason: failure to allege that they were obligated to report and deliver to California money

15

owed on uncashed cashier's checks. We disagree and conclude the complaints adequately allege the banks were under such an obligation.

To state a false claim, the pleading must allege the violation of an "obligation." (Gov. Code, § 12651, subd. (a)(7) [a person makes a false claim if he "[k]nowingly makes, uses, or causes to be made or used a false record or statement material to an *obligation* to pay or transmit money or property to the state or to any political subdivision, or knowingly conceals or knowingly and improperly avoids, or decreases an *obligation* to pay or transmit money or property to the state or to any political subdivision"], italics added.) The CFCA defines an obligation as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." (Gov. Code, § 12650, subd. (b)(5).)

We must assess the sufficiency of the allegations in the two complaints under the pleading requirements for a CFCA cause of action. " 'As in any action sounding in fraud, the allegations of a [CFCA] complaint must be pleaded with particularity.' " (*State of California ex rel. McCann v. Bank of America, N.A.*, *supra*, 191 Cal.App.4th at p. 906.) "Allegations of the defendant's knowledge and intent to deceive may use conclusive language, however." (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 803.) "The specificity requirement serves two purposes. The first is notice to the defendant, to 'furnish the defendant with certain definite charges which can be intelligently met.' [Citations.] The pleading of fraud, however, is also the last remaining habitat of the common law notion that a complaint should be sufficiently specific that the court can weed out nonmeritorious actions on the basis of the pleadings. Thus, the pleading should be sufficient ' "to enable the

16

court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." ' " (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217.)

The complaints allege the source of the banks' obligation is section 1511, the provision of the UPL stating that "[a]ny sum payable on a money order, travelers check, or other similar written instrument (other than a third-party bank check)" escheats to California if the instrument was purchased in California. (§ 1511, subd. (a)(1).) Elder contends that the cashier's checks at issue are "similar written instrument[s]" to money orders and travelers checks and, because they were purchased in California, the uncashed checks escheated to California. The banks respond that there is no established obligation for them to transmit unclaimed money owed on cashier's checks as escheated property in their place of purchase, as there is no explicit statutory requirement or other authority stating that cashier's checks are similar to money orders and travelers checks.

The complaints allege that at least some of the cashier's checks were subject to escheat in California under the last-known-address rule in section 1510. The complaints allege that the banks "regularly issue[] cashier's checks to its account holders, many of whom purchase the cashier's checks for themselves," and that "[a]s to such checks, including such checks purchased in California, [the banks'] records contain the last known address of every purchaser/payee owner." The complaints also identify some cashier's checks with payees that certainly have their address in California, such as the State Bar of California, the California Department of Motor Vehicles, and the Medical Board of California. At least two federal district courts, including the district court that presided over this matter before it was remanded to the superior court, credited the same allegations in concluding the complaints do

17

not present federal questions. (See *California ex rel. Elder v. J.P. Morgan Chase Bank, N.A.* (N.D.Cal. Mar. 31, 2021, No. 21-CV-00419-CRB) 2021 U.S. Dist. Lexis 64374, at pp. *15–*16 ["[Elder] claims that Defendants have failed to escheat cashier's checks to the State of California even when the check's payee is also the purchaser and Defendants' records show the payee/purchaser to reside in California. . . . For this subset of checks, no federal preemption defense is available."]; *Illinois ex rel. Elder v. U.S. Bank N.A.* (N.D. Ill. Oct. 22, 2021, No. 21 C 926) 2021U.S. Dist. Lexis 204052, at p. *9 [citing allegation that U.S. Bank's records " 'contain the last known address of every purchaser/payee owner' " in deciding that a similar complaint under Illinois law did not present a substantial federal question].) We likewise credit the complaints' allegations in concluding they adequately allege a failure to report and deliver property based on the owner's last known address.

Moreover, cashier's checks are sufficiently similar to money orders and travelers checks to be considered, at least at the pleading stage, "similar written instrument[s]" within the meaning of section 1511. Subdivision (a) of section 1511 applies to other similar written instruments "on which a business association is directly liable." Under federal law, a cashier's check is an instrument on which a business association is directly liable. (See 12 U.S.C. § 4001(5) [cashier's check is "a direct obligation" of a "depository institution"].) And, while it may be, as the banks argue, that no case has expressly held cashier's checks are similar to money orders and travelers checks, cashier's checks share the same fundamental characteristics as money orders and travelers checks. Like money orders and travelers checks, cashier's checks are issued upon receipt of payment with the obligation to deliver that payment to the bearer upon presentation of the instrument; if

18

the instrument is never presented, the issuer retains funds that rightfully belong to another. The California Uniform Commercial Code defines a cashier's check as "a draft with respect to which the drawer and drawee are the same bank or branches of the same bank." (Cal. U. Com. Code, § 3104, subd. (g).) And a money order can be considered a type of check. (Cal. U. Com. Code, § 3104, subd. (f) ["An instrument may be a check even though it is described on its face by another term, such as 'money order.' "].) The comments in the Commercial Code confirm that money orders can be sold by banks, and that the bank is the drawee of such a money order, just as they are for cashier's checks. (Cal. U. Com. Code, § 3104, coms., § 4.) Indeed, one treatise on the Commercial Code, citing a case from Ohio, has observed " 'Bank money orders . . . are essentially the same as cashier's checks.' " (5A Lawrence's Anderson on the U. Com. Code (3d ed. 2021) § 3-104:36, p. 141.)

As above, *Bowen* does not support the banks' arguments. The court in *Bowen* concluded that the plaintiff had not alleged a definitive obligation to report reconveyance fees as escheated property because he did not allege "that any of the contracts provided for the specific remedy of disgorgement of the reconveyance fees, or that any judgment was entered to that effect." (*Bowen*, *supra*, 126 Cal.App.4th at p. 230.) The Civil Code section requiring a lender to refund a reconveyance fee if a release of obligation was previously recorded was not enacted until after the time period in which the banks allegedly failed to refund the reconveyance fees. (*Id.* at p. 243.) In contrast, the present complaints identify a source of the obligation to report and deliver the cashier's checks—sections 1510 and 1511—under extant law when the banks allegedly held the unclaimed funds. *McCann* is distinguishable for the same reason. The plaintiff in *McCann* only identified an allegedly fraudulent practice—the "failure to investigate unidentified credits and to

19

then credit them to presenting banks"—but did not allege the "existence of any legal obligation for [the bank] to do otherwise, or to directly identify an amount or account—a liquidated and certain obligation—due to any specified presenting bank (in California or elsewhere) that would be subject to escheat under the UPL." (*State of California ex rel. McCann v. Bank of America, N.A.*, *supra*, 191 Cal.App.4th at pp. 909–910.)

The banks argue that representations made on behalf of the State of California in the so-called "Moneygram" case pending before the United States Supreme Court[4] demonstrate that it is unclear whether cashier's checks are similar to money orders and travelers checks, negating any possibility of a knowing violation under the UPL. This argument was not raised until the banks' reply briefs, so may be disregarded. (See *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275 ["We will not ordinarily consider issues raised for the first time in a reply brief."].) Even if considered, the argument does not necessarily negate the allegation that the banks knew they were engaging in conduct proscribed by the statute. At issue in the Moneygram case is whether "Moneygram Official Checks" are "similar written instrument[s]" to money orders and travelers checks under the Federal Disposition Act, 12 United States Code section 2503. The banks cite a brief submitted on behalf of California and approximately 30 other states, which asserts that whether the Federal Disposition Act applies to numerous pre-paid instruments, including cashier's checks, is not at issue in the case "and need not be decided. Such a decision would require a detailed analysis based on the specific characteristics of those products and how they function in the marketplace." This statement

---

[4] (*Delaware v. Arkansas* (Nos. 22O145 & 22O146) motion for leave granted Oct. 3, 2016, __ U.S. __ [__ S.Ct. __, __ L.Ed.2d 643 __].)

hardly acknowledges that cashier's checks are not similar to money orders and travelers checks; at most it underscores the inappropriateness of resolving the issue at the pleading stage. In a "detailed analysis" following discovery and the consideration of expert testimony, the banks may attempt to prove that the cashier's checks in question are not sufficiently similar to money orders and travelers checks to fall within section 1511. But for pleading purposes, the complaints adequately allege the existence of an obligation as required under the CFCA.[5]

## 6. Due Process

The banks also argue that awarding the relief prayed for in these complaints would violate their due process rights by subjecting them to a "double escheat" because they would be obligated to report and deliver the same unclaimed property in two states, California and Ohio. The banks rely on *Western Union Tel. Co. v. Pennsylvania* (1961) 368 U.S. 71, in which the Supreme Court held that Western Union was denied due process of law by an escheat judgment in Pennsylvania because the judgment did not protect

_____

[5] We decline JP Morgan's request for judicial notice of two briefs and a special master's report filed in the Moneygram case. We do, however, take note of a recent interlocutory ruling in *Illinois ex rel. Elder v. JPMorgan Chase Bank, N.A.* (N.D. Ill. Aug. 30, 2022, No. 21 C 85) ___ F.Supp. 3d ___ [2022 U.S. Dist. Lexis 155979], but consider its significance limited. There the federal district court, relying on filings from the *Moneygram* case, granted a motion to dismiss with leave to amend after concluding that the phrase "other similar instrument" is ambiguous and that the complaint did not adequately allege scienter in the absence of "allegations that authoritative guidance cautioned defendant away from its interpretation that cashier's checks are not 'similar instruments' within the meaning of [the federal statute]." (*Id.* at p.*19.) We do not agree that any such allegation is necessary under California pleading requirements or that such "authoritative guidance" is indispensable to prove that defendants knew that the uncashed cashier's checks were subject to escheatment in California.

21

Western Union from competing claims by other states to the same money. (*Id.* at p. 76.) There was an "active controversy" because New York was making a "particularly aggressive" claim to the same money subject to the Pennsylvania escheat judgment. (*Ibid.*) Here, neither the complaints nor any other judicially noticeable facts brought to our attention disclose that Ohio or any other state has laid claim to, or obtained a judgment for, the money owed on the cashier's checks at issue here.[6] Nor does Ohio's unclaimed property law, at least on its face, conflict with California's UPL such that there is a risk the two states are competing for the same funds. (See Ohio Rev. Code Ann., § 169.02(F) [when no address of record for owner of cashier's check, address is presumed to be "where the instrument was certified or issued"]; Ohio Rev. Code Ann., § 169.04(A) [funds owing to owner whose last known address is in another state are not unclaimed funds under Ohio unclaimed property law].) Moreover, the complaints seek penalties under the CFCA, which are not the same as the funds owed on those cashier's checks. Whatever facts may be disclosed at trial, the pleadings disclose no potential due process violation.

## DISPOSITION

The petitions for writ of mandate are denied. Elder shall recover his costs in this proceeding. (Cal. Rules of Court, rule 8.493(a).)

---

[6] We decline JP Morgan's request for judicial notice of three complaints Elder filed in other cases in Indiana, New Jersey, and Illinois, as those complaints are not relevant to whether the banks are facing competing claims from California and Ohio to the cashier's checks at issue here. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 700, fn. 10 ["An appellate court 'may decline to take judicial notice of matters not relevant to dispositive issues on appeal.' "].)

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

| | |
|---|---|
| Trial court: | San Francisco County Superior Court |
| Trial judge: | Honorable Ethan P. Schulman |
| Counsel for Petitioner JPMorgan Chasebank, N.A.: | MORGAN, LEWIS & BOCKIUS LLP<br>Douglas W. Baruch<br>Jennifer M. Wollenberg<br>Neaha P. Raol<br>Thomas M. Peterson<br>Joseph E. Floren |
| Counsel for Petitioner U.S. Bank National Association: | BUCKLEY LLP<br>James R. McGuire<br>Sarah N. Davis<br>Andrew W. Schilling (Pro Hac Vice)<br>Jackson Hagen (Pro Hac Vice) |
| Counsel for Respondent: | No appearance |
| Counsel for Amicus Curiae, Attorney General, the State of California | Rob Bonta<br>Attorney General Of California<br>Matthew Rodriquez<br>Chief Assistant Attorney General<br>Martin H. Goyette<br>Senior Assistant Attorney General<br>Jacqueline Dale<br>Supervising Deputy Attorney General<br>Brendan Ruddy<br>Deputy Attorney General |
| Counsel for Real Party in Interest Ken Elder: | SILVER GOLUB & TEITELL LLP<br>David S. Golub<br><br>DENVER LAW GROUP<br>Michael P. Denver<br><br>GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP<br>Michael S. Devorkin |

24